# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ADAM FRANCHI, Individually and On Behalf of All Others Similarly Situated, | ) ) ) |
| Plaintiff, | ) Case No. _____ ) |
| v. | ) CLASS ACTION ) |
| EDGE THERAPEUTICS, INC., BRIAN LEUTHNER, SOL BARER, ISAAC BLECH, ROSEMARY A. CRANE, JAMES J. LOUGHLIN, R. LOCH MACDONALD, LIAM RATCLIFFE, ROBERT SPIEGEL, PDS BIOTECHNOLOGY CORPORATION, and ECHOS MERGER SUB, INC., | ) JURY TRIAL DEMANDED ) ) ) ) ) ) ) ) |
| Defendants. | ) |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. This action stems from a proposed transaction announced on November 26, 2018 (the "Proposed Transaction"), pursuant to which Edge Therapeutics, Inc. ("Edge" or the "Company") will be acquired by PDS Biotechnology Corporation ("Parent") and Echos Merger Sub, Inc. ("Merger Sub," and together with Parent, "PDS").

2. On November 23, 2018, Edge's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger with PDS (the "Merger Agreement").

3. On December 21, 2018, defendants filed a Form S-4 Registration Statement (the

"Registration Statement") with the United States Securities and Exchange Commission (the "SEC") in connection with the Proposed Transaction.

4. The Registration Statement omits material information with respect to the Proposed Transaction, which renders the Registration Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Registration Statement.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Edge common stock.

9. Defendant Edge is a Delaware corporation and maintains its principal executive offices at 300 Connell Drive, Suite 4000, Berkeley Heights, New Jersey 07922. Edge's common stock is traded on the NasdaqGS under the ticker symbol "EDGE." Edge is a party to the Merger Agreement.

10. Defendant Brian Leuthner is President, Chief Executive Officer, and a director of the Company.

11. Defendant Sol Barer is Chairman of the Board of the Company.

12. Defendant Isaac Blech is a director of the Company.

13. Defendant Rosemary A. Crane is a director of the Company.

14. Defendant James J. Loughlin is a director of the Company.

15. Defendant R. Loch Macdonald is a director of the Company.

16. Defendant Liam Ratcliffe is a director of the Company.

17. Defendant Robert Spiegel is a director of the Company.

18. The defendants identified in paragraphs 10 through 17 are collectively referred to herein as the "Individual Defendants."

19. Defendant Parent is a Delaware corporation and a party to the Merger Agreement.

20. Defendant Merger Sub is a Delaware corporation, a wholly-owned subsidiary of Parent, and a party to the Merger Agreement.

## CLASS ACTION ALLEGATIONS

21. Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of Edge (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

22. This action is properly maintainable as a class action.

23. The Class is so numerous that joinder of all members is impracticable. As of November 23, 2018, there were approximately 10,518,521 shares of Edge common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

24. Questions of law and fact are common to the Class, including, among others: (i) whether defendants violated the 1934 Act; and (ii) whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

25. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

26. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

27. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## **SUBSTANTIVE ALLEGATIONS**

*Background of the Company and the Proposed Transaction*

28. Edge is a clinical-stage biotechnology company that seeks to discover, develop, and commercialize novel, hospital-based therapies capable of transforming treatment paradigms for the management of acute, life-threatening conditions.

29. On November 23, 2018, Edge's Board caused the Company to enter into the Merger Agreement with PDS.

30. Under the exchange ratio formula in the Merger Agreement, immediately after the merger, the former PDS securityholders are expected to own approximately 70% of the aggregate number of shares of Edge common stock issued and outstanding following the consummation of the merger, and the stockholders of Edge as of immediately prior to the merger are expected to own approximately 30% of the aggregate number of the post-closing shares.

31. Following the consummation of the Proposed Transaction, the name of Edge will be changed from "Edge Therapeutics, Inc." to "PDS Biotechnology Corporation."

32. According to the press release announcing the Proposed Transaction:

Edge Therapeutics, Inc. (Nasdaq: EDGE) and PDS Biotechnology Corporation, a privately-held, clinical-stage cancer immunotherapy company, announced today that their respective boards of directors have approved a definitive merger agreement. The merger is expected to create a combined company with a growing pipeline of next generation cancer immunotherapies based on the proprietary, multi-functional Versamune® technology platform, and sufficient cash to fund operations into 2020. . . .

Versamune® Platform

PDS Biotechnology's Versamune® platform is based on novel and proprietary synthetic cationic lipids, which promote critical intra-cellular delivery of tumor-related antigens and activate important immunologic signaling pathways that induce effective priming and proliferation of critical populations of killer T-cells able specifically to attack and kill cancerous cells. Versamune® induces the activation of type I interferons and associated chemokines resulting in a potentially powerful and targeted immune response against cancer cells. In addition, in preclinical studies, Versamune® has been shown to overcome important immuno-suppressive cells that exist within the tumor to protect the tumor from T-cell attack.

Growing Product Pipeline

PDS Biotechnology is developing PDS0101 for the treatment of multiple human papilloma virus (HPV)-induced cancers, including cervical, anal and head and neck cancers. PDS Biotechnology plans to initiate multiple Phase 2/3 clinical trials for PDS0101 in HPV-associated cancers.

In a Phase 1/2a dose-escalating study of PDS0101, results confirmed preclinical projections of high levels of active HPV-specific killer T-cells (CD8+) and memory T-cell induction. In addition, T-cell responses were independent of patient

genetic/HLA sub-types. In the study, no dose-limiting toxicities were observed.

In addition to PDS0101, PDS Biotechnology's pipeline includes multiple preclinical programs developing Versamune®-based cancer immunotherapies in combination with checkpoint inhibitors for various late-stage cancers.

Management Team

Pursuant to the merger agreement, the management team of the combined company is expected to be comprised of Frank Bedu-Addo, PhD, Co-Founder, President, CEO of PDS Biotechnology who will serve as CEO, Brian Leuthner, President, CEO of Edge Therapeutics, who will serve as President, and Lauren Wood, MD, formerly of the National Cancer Institute, serving as the company's Chief Medical Officer. In addition, Gregory Conn, PhD, Co-Founder and Chief Scientific Officer of PDS Biotechnology is expected to continue as CSO of the combined company, and Andrew Saik, Chief Financial Officer of Edge Therapeutics is expected to continue as CFO of the combined company.

Board of Directors

Pursuant to the merger agreement, the Board of Directors of the combined company is expected to consist of four members of the current PDS Biotechnology board and three members from the current Edge Therapeutics board.

Pursuant to the merger agreement, Frank Bedu-Addo, PhD, Co-Founder, President, CEO of PDS Biotechnology and Brian Leuthner, President, CEO of Edge Therapeutics are expected to serve on the Board of Directors. Other board members are expected to include: De Lyle W. Bloomquist, formerly President, Global Chemicals Business for Tata Chemicals Ltd.; Gregory Freitag, J.D., CPA, AxoGen, Inc.'s General Counsel, SVP of Business Development; Sir Richard Sykes, previously Chief Executive and Chairman of GlaxoWellcome from 1995 to 2000 and then Chairman of GlaxoSmithkline until 2002; James J. Loughlin, former Partner at KPMG LLP and Robert Spiegel, M.D., FACP, previously Chief Medical Officer of the Schering-Plough Research Institute.

In addition, Sol J. Barer, Ph.D., Chairman of the Board of Directors at Teva Pharmaceutical Industries Ltd. and who previously spent 24 years at Celgene as, among other positions, President, COO and CEO, as well as its Executive Chairman and Chairman, is expected to serve as an advisor to the Board of Directors.

Proposed Transaction Details

The merger is structured as a stock-for-stock transaction whereby all of PDS's outstanding shares of common stock and securities convertible into or exercisable for PDS's common stock will be converted into Edge's common stock and securities convertible into or exercisable for Edge common stock. Under the

exchange ratio formula in the merger agreement, immediately following the merger, the former PDS security holders will own approximately 70% of the combined company and existing Edge security holders will own approximately 30% of the combined company, subject to certain potential adjustments as described in the merger agreement. The transaction has been approved by the boards of directors of both companies. The merger is expected to close in the first quarter of 2019, subject to the approval of the stockholders of each company as well as other customary closing conditions.

Upon the closing of the transaction, the merged company will operate under the PDS Biotechnology Corporation name, and the combined company's common stock is expected to continue to trade on NASDAQ under a new ticker symbol to be announced at a later date. Piper Jaffray acted as exclusive financial advisor to Edge Therapeutics on the proposed transaction and Dechert LLP served as legal counsel to Edge Therapeutics. DLA Piper LLP served as legal counsel to PDS Biotechnology.

*The Registration Statement Omits Material Information, Rendering It False and Misleading*

33. Defendants filed the Registration Statement with the SEC in connection with the Proposed Transaction.

34. As set forth below, the Registration Statement omits material information with respect to the Proposed Transaction, which renders the Registration Statement false and misleading.

35. First, the Registration Statement omits material information regarding the Company's and PDS's financial projections, as well as the analyses performed by the Company's financial advisor in connection with the Proposed Transaction, Piper Jaffray & Co. ("Piper Jaffray").

36. The Registration Statement fails to disclose the "financial forecasts, relating to the estimated cash usage of each of Edge and PDS, on stand-alone bases, that were furnished to Piper Jaffray by Edge and PDS."

37. With respect to Piper Jaffray's Selected IPO Analysis, the Registration Statement fails to disclose the individual implied equity values and pre-money enterprise values for the

7

companies observed by Piper Jaffray in the analysis.

38.     With respect to Piper Jaffray's Selected Comparable Public Companies Analysis, the Registration Statement fails to disclose the individual equity values and enterprise values for the companies observed by Piper Jaffray in the analysis.

39.     The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion. Moreover, when a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

40.     Second, the Registration Statement fails to disclose whether the Company entered into any non-disclosure agreements that contained standstill and/or "don't ask, don't waive" provisions that are or were preventing the counterparties from submitting superior offers to acquire the Company.

41.     Without this information, stockholders may have the mistaken belief that, if these potentially interested parties wished to come forward with a superior offer, they are or were permitted to do so, when in fact they are or were contractually prohibited from doing so.

42.     Third, the Registration Statement omits material information regarding potential conflicts of interest of Piper Jaffray.

43.     The Registration Statement fails to disclose whether Piper Jaffray has performed past services for any parties to the Merger Agreement or their affiliates, as well as the timing and nature of such services and the amount of compensation Piper Jaffray received for providing such

services.

44. The Registration Statement also fails to disclose the amount of compensation Piper Jaffray received for "act[ing] as one of several underwriters of equity offerings completed by portfolio companies of New Leaf Venture Partners, a significant stockholder of Edge and an entity in which a member of the Edge Board is a partner, for which Piper Jaffray received fees."

45. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

46. Fourth, the Registration Statement fails to disclose the terms and values of all proposals and indications of interest submitted to the Company during the process leading up to the Merger Agreement.

47. Stockholders are entitled to an accurate description of the "process" the Individual Defendants used in coming to their decision to support the Proposed Transaction.

48. The omission of the above-referenced material information renders the Registration Statement false and misleading, including, *inter alia*, the following sections of the Registration Statement: (i) Background of the Merger; (ii) Edge Reasons for the Merger; and (iii) Opinion of the Financial Advisor to the Edge Board.

49. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## COUNT I

**Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Edge**

50. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

51. The Individual Defendants disseminated the false and misleading Registration

Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. Edge is liable as the issuer of these statements.

52.     The Registration Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Registration Statement.

53.     The Individual Defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

54.     The omissions and false and misleading statements in the Registration Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Registration Statement and in other information reasonably available to stockholders.

55.     The Registration Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

56.     By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

57.     Because of the false and misleading statements in the Registration Statement, plaintiff and the Class are threatened with irreparable harm.

## **COUNT II**

### **Claim for Violation of Section 20(a) of the 1934 Act<br>Against the Individual Defendants and PDS**

58. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

59. The Individual Defendants and Encana acted as controlling persons of Edge within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of Edge and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

60. Each of the Individual Defendants and PDS was provided with or had unlimited access to copies of the Registration Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

61. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Registration Statement contains the recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Registration Statement.

62. PDS also had direct supervisory control over the composition of the Registration Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Registration Statement.

63. By virtue of the foregoing, the Individual Defendants and PDS violated Section 20(a) of the 1934 Act.

64. As set forth above, the Individual Defendants and PDS had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act.  As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: January 9, 2019 **RIGRODSKY & LONG, P.A.**

By: */s/ Gina M. Serra*
    Brian D. Long (#4347)

**OF COUNSEL:**     Gina M. Serra (#5387)
    300 Delaware Avenue, Suite 1220

**RM LAW, P.C.**     Wilmington, DE 19801
Richard A. Maniskas     Telephone: (302) 295-5310
1055 Westlakes Drive, Suite 300     Facsimile: (302) 654-7530
Berwyn, PA 19312     Email: bdl@rl-legal.com
Telephone: (484) 324-6800     Email: gms@rl-legal.com
Facsimile: (484) 631-1305
Email: rm@maniskas.com     *Attorneys for Plaintiff*